Lewis Aaron BOWEN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–78–465.

Court of Criminal Appeals of Oklahoma.

Jan. 10, 1980.

Pete Silva, Jr., Asst. Public Defender, Tulsa County, Lewis Aaron Bowen, pro se, for appellant.

Jan Eric Cartwright, Atty. Gen., David W. Lee, Asst. Atty. Gen., Timothy S. Frets, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

The appellant, Lewis Aaron Bowen, was convicted in the District Court of Tulsa County, Case No. CRF–77–2815, of the offense of Armed Robbery, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 801. In a bifurcated proceeding, the jury set punishment at fifteen (15) years, to which a sentence was accordingly entered.

At approximately 9:15 on the evening of October 18, 1977, the defendant entered the Denver Grill in Tulsa, Oklahoma, ordered a cup of coffee and sat down. Shortly thereafter, Herman Beck entered the restaurant, displayed a shotgun and demanded money. The defendant left, and Beck emptied the cash register and also left.

The robbery victims saw Beck depart the scene in an older model car, tan in color with a dark top. They then called the police and described the automobile. They also described the occupants of the vehicle as being two black males. The automobile was identified at trial as belonging to the defendant. A few moments after the robbery, the automobile containing the defendant and Beck was observed approximately three miles from the crime scene. The suspects were pulled over; they were arrested after hats similar to those worn by the robbers were discovered in the back seat.

A search of the car and the suspects at the scene revealed $53.00 in currency and a shotgun similar to that used in the robbery. After the car had been impounded, the search at the police station revealed two rolls of pennies. Coats similar to those worn by the armed robbers were also seized.

At trial the defendant admitted being in the Denver Grill at the time the robbery occurred. He further admitted having been with Beck earlier that day. Additionally, the coat worn by Beck belonged to the defendant. The defendant denied participating in the robbery, however, and testified that he and Beck parted company prior thereto. Further, he testified that when he attempted to drive away from the robbery

scene, his car stalled, giving Beck time to leave the restaurant, catch up with him and demand a ride at gunpoint. The defendant testified that he acquiesced in driving Beck away from the scene out of fear that Beck or his associates might harm his family.

The first assignment of error raised by the defendant's court-appointed counsel is that the warrantless search of the automobile was illegal and the shotgun improperly admitted. In support, he asserts that the "inventory" was a mere subterfuge for an exploratory search. Although this was a reasonable circumstance for conducting a police inventory, we agree that the seizure cannot be sustained on that basis in this instance. While the rationale for such procedures is to protect property from being stolen and to prevent false charges of theft against police officers, the search here was obviously not conducted for that purpose, since the spare tire, jack, battery, a blanket and other items in the trunk were not inventoried after the shotgun was removed. See *Gonzales v. State*, Okl.Cr., 507 P.2d 1277 (1973).

We are of the opinion, however, that the officers had probable cause to stop and arrest the defendant and Beck for the armed robbery which had just occurred. They also had probable cause to believe that the shotgun and fruits of the crime could be found in the automobile. Further, the record reveals exigent circumstances justifying a warrantless search.

At about 9:27 p. m., five to eight minutes after the robbery occurred, Officers Richard McSlarrow and Raymond Williams received a police broadcast that two black males had left the scene of a robbery in the downtown Tulsa area. The suspects' vehicle was described an an older model car, believed to be a Chevrolet, in extremely rough condition, dark brown over light colored cream or tan, possibly with a vinyl top. The occupants were described as tall and slender and short and stocky, one wearing a yellow brimmed straw hat and the other one wearing a blue flop hat.

Moments later, the officers observed a car similar to that described approximately three miles from the Denver Grill, stopped it and ordered the occupants to get out. Through a window of the car, Officer Williams observed a blue denim hat, a straw hat and two jackets. After calling in to confirm that the automobile, the defendant and Beck fit the broadcast description, the officers placed the suspects under arrest.

The trunk of the automobile was then opened and the loaded shotgun was found. A subsequent search of the passenger compartment, after the vehicle had been impounded, revealed two rolls of pennies. At trial the officers alternatively explained the search of the trunk as an inventory search or as an effort to protect themselves from a possible armed third felon hiding in the trunk. While we refuse to add credence to the above mentioned rationales, we are of the opinion that under the existing *exigent circumstances coupled with probable cause*, the officers acted lawfully in stopping and arresting the defendant and in conducting the warrantless search at the scene and later at the police station. *Harrigan v. State*, Okl.Cr., 566 P.2d 139 (1977); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Gaston v. State*, Okl.Cr., 457 P.2d 807 (1969). Therefore, the evidence discovered was admissible and this assignment of error is without merit.

It is next alleged that admission of evidence of prior convictions constituted error pursuant to *Lamb v. Brown*, 456 F.2d 18 (10th Cir. 1972). The defendant was first convicted of Burglary in the Second Degree on June 14, 1963, at which time he was 17 years old. The State did not use this conviction to enhance, but the defendant also alleges that his subsequent convictions, Carrying a Firearm, After Former Conviction of a Felony; Carrying a Concealed Weapon, After Former Conviction of a Felony; and two counts of Robbery With Firearms, After Former Conviction of a Felony, are invalid for enhancement purposes since they were based at least in part on the conviction rendered while he was an uncertified juvenile.

Since the filing of the briefs in this case, this Court has spoken to the effect of the unconstitutionality of 10 O.S.1971, § 1101, in *Edwards v. State*, Okl.Cr., 591 P.2d 313 (1979). In *Carter v. State*, Okl.Cr., 595 P.2d 1352 (1979), we said:

"[T]he case falls within the application of *Edwards v. State*, supra. That case speaks to the situation which exists here, where the appellant is not challenging an allegedly invalid conviction, but one in which the maximum punishment was raised as the result of a prior allegedly invalid conviction. If the appellant was not certified, and would not have been certified, had a certification hearing been held, then the District Court should grant the appropriate relief. . . . [A] person complaining of his earlier juvenile conviction should initiate an application for post conviction relief under the provisions of 22 O.S.1971, § 1080, et seq., to challenge the validity of the judgment and sentence. With reference to the instant case, the appellant must file that application in the District Court of [the rendering jurisdiction of the contested prior conviction]. That court must then make a determination as to whether or not the juvenile would have been certified to stand trial as an adult. In the event that decision is adverse to the applicant and relief is denied, that denial may be appealed to this Court under the provision of 22 O.S.1971, § 1087, and Rule 4 of the Rules of this Court. On the other hand, if the District Court finds that the juvenile conviction should be vacated, then the sentence in the instant case must subsequently be made to conform to the provisions of [punishment for the unenhanced felony]."

In the instant case, the only prior felony convictions used to enhance which relied upon the June 14, 1963, conviction for their validity were those for possession and concealment of weapons. Should the 1963 burglary conviction be determined invalid, neither of the weapons offenses could be used for after former conviction purposes.

However, although these three prior convictions were used to enhance punishment in both robbery convictions, the validity of the robbery judgments themselves did not depend upon the legality of those prior convictions. Therefore, the robberies committed after the defendant became an adult more than adequately meet the requirements of 21 O.S.Supp.1978, § 51, for enhancement purposes. Further, we are of the opinion that since the defendant has now committed his third armed robbery, the 15 year sentence imposed is not in the least excessive; even if his first three priors were to be vacated, the error committed by their use in the instant case was harmless, and the 15 year sentence will be sustained.

 The defendant further complains that he was prejudiced by the State's closing argument during the second stage of the bifurcated proceeding when the prosecutor commented on what went through the mind of the victim during the robbery. We find this assignment of error lacking merit, however, since evidence of fear on the part of a victim is competent in a robbery prosecution. *Lawson v. State*, Okl.Cr., 569 P.2d 479 (1977). Counsel for both the State and the defense have a right to discuss fully from their standpoints the evidence and inferences arising therefrom, and in this instance the evidence more than sustained the prosecutor's inference of fear on the part of the robbery victim.

 The defendant has additionally filed a pro se brief, raising in it the allegations of error above determined to be without merit and, therefore, not in need of reconsideration. Additionally, he complains that the trial court erred in denying him the right to defend himself, pursuant to *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Due to the near certain detriment to the defendant's chances of receiving a fair defense and to the administration of justice, the defendant must clearly and unequivocally assert his demand to proceed pro se: "[I]f a defendant wishes to proceed pro se it is incumbent upon him to initiate a request therefor and not a duty of the court to advise him of this right." *Felts*

*v. State*, Okl.Cr., 588 P.2d 572 (1978). See also *Johnson v. State*, Okl.Cr., 556 P.2d 1285 (1976).

In the instant case, the issue is whether the defendant made a sufficient demand on the record to constitute an effective election for self-representation. The defendant alleges that at his arraignment he was permitted, upon request, to proceed pro se, but was denied the right to conduct his own defense at subsequent appearances. Particularly, he complains that he was not permitted to participate at the preliminary hearing nor at an unrecorded hearing on the motion to quash the evidence seized without a warrant, and he contends his request for a court reporter at that latter hearing was denied. At the arraignment, he signed a pauper's statement and accepted the appointment of a public defender, though, he alleges, the attorney was to act in an advisory capacity.

The record includes a number of pro se motions which were mailed to the Honorable Raymond W. Graham, who ultimately presided at trial, in which the defendant referred to himself as Lewis A. Bowen, defendant pro se, to be assisted by the public defender. In these motions, which were dated and filed in the record between the time of the preliminary hearing and trial, he further complained that he was being denied access to the law library and that after being granted the right to proceed pro se he was ordered by the court at the preliminary hearing to "sit down."

In these same motions, however, he additionally complained of the failure of the Public Defender's Office to adequately advise and represent him. Further, the public defender represented him at preliminary hearing, at the motion to quash and at trial; and neither the transcripts of the preliminary hearing nor of the trial indicate that the defendant in any manner requested the right to speak (except to testify) or object to representation by the public defender who handled each of those proceedings. ▆▆▆ Once a defendant makes a demand, it is encumbent upon the trial court to advise him on the record of the dangers

and disadvantages of self-representation, receive from him an intelligent and voluntary waiver of his right to counsel, and in appropriate circumstances appoint standby counsel to advise and assist the defendant upon his request. *Stiner v. State*, Okl.Cr., 539 P.2d 750 (1975). Adhering to the rationale enunciated in *Felts v. State*, supra, while defendants are entitled to proceed pro se, it is unwise to make it easy for them to do so. We are of the opinion that a defendant selecting to proceed pro se should be held to the same standard as an attorney; the right to waive assistance of counsel and proceed pro se is waived by failure of the defendant to make or renew his demand on the record at trial. Since an indigent's right to court-appointed counsel does not include the right to select a particular attorney, the defendant exhibited a clear intent to proceed pro se by insisting upon discharge of appointed counsel in *Johnson v. State*, supra. In the instant case, however, the defendant acquiesced in representation by the public defender by proceeding to trial without either insisting that he be discharged or that the scope of his trial involvement be limited. Although it is proper for an accused to proceed to trial pro se accompanied by advisory "standby" counsel, there is no constitutional right to representation partially pro se and partially by counsel. *Stiner v. State*, supra. "[W]here the defendant is represented by counsel, one or the other must be in charge of the defense in order to preserve orderly procedure." *Smith v. State*, Okl.Cr., 521 P.2d 832, 836 (1974).

▆▆▆ We are of the opinion that the defendant failed to preserve any error since he failed to express his intent at trial and accepted representation by the public defender. We therefore find this assignment of error to be without merit. See *Stowe v. State*, Okl.Cr., 590 P.2d 679 (1979).

The defendant further alleges that he was denied a hearing on his motion to suppress evidence seized without a warrant. We find this assignment patently frivolous, however, insofar as the trial transcript contains an in camera hearing conducted for that purpose.

■ The defendant next contends that he was denied a requested pretrial lineup and that the in court identification at trial was tainted by an overly suggestive "lineup" conducted at the preliminary hearing. We initially note that an accused is not entitled as a matter of right to be identified from a lineup. *Grigsby v. State*, Okl.Cr., 496 P.2d 1188 (1972); *Roberson v. State*, Okl.Cr., 483 P.2d 353 (1971).

■ Further, this assignment of error is improperly before this Court on appeal for the reason that the defendant neither objected to the witness' in court identification at trial nor made a timely request for an evidentiary hearing at which the trial court could ascertain whether the in court identification was based on an independent source sufficiently distinguishable to be purged of the primary taint of the allegedly illegal pretrial identification. *Edwards v. State*, Okl.Cr., 554 P.2d 46 (1976); *Johnson v. State*, Okl.Cr., 550 P.2d 984 (1976); *McKee v. State*, Okl.Cr., 532 P.2d 472 (1975); *Bridgeman v. State*, Okl.Cr., 496 P.2d 431 (1972). We therefore find this assignment of error to be without merit.

■ The defendant's next assignment of error is that he was denied his constitutional right to a speedy trial pursuant to *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Specifically, he alleges that continuances were granted upon the State's assertion that a necessary State's witness was in the hospital. But, he claims, when trial ultimately occurred that witness did not appear to testify.

His allegations are not supported by the record. The entire proceeding, from the filing of the information to the sentencing, occurred in a period of less than five months. At no time during that period did the defendant interpose an objection to continuances, nor did he demand trial. Neither was the issue raised in the motion for new trial nor in the petition in error. While the United States Supreme Court in *Barker v. Wingo*, supra, held that the speedy trial right was not one which could be waived by failure to demand the same, the Court further indicated that failure to demand a speedy disposition was a major factor which the defendant would have a difficult task overcoming.

This prosecution was completed in a reasonably short period of time, and the record shows no misconduct on the part of the State resulting in delay. Though the defendant was incarcerated pending trial, there is no allegation nor proof that the defense was hampered or that the defendant was otherwise prejudiced. We are, therefore, of the opinion that the trial court did not abuse its discretion in granting continuances to the State and so find this assignment to be without merit.

■ Next, the defendant contends that the evidence is insufficient to sustain this conviction and, additionally, that the court erred in failing to instruct on lesser charges. With regard to the latter proposal, the defendant fails to indicate what lesser charge should have been instructed, and the record does not reflect that the instructions given were objected to nor that alternative instructions were requested. While the evidence in this case may have warranted an instruction on accessories, pursuant to 21 O.S.1971, § 173, we are of the opinion that the defendant waived error by failing to request the same. See *Thomsen v. State*, Okl.Cr., 582 P.2d 829 (1978). Further, since the evidence indicates that the defendant acted either as a getaway driver from the start or served in that capacity under duress, rather than serving as an accessory after the crime had been committed, we are of the opinion that the defendant was not prejudiced.

■ The defendant spent much of his time on the day of the robbery with Beck. By his own admission, they were together that evening and parted only a short time before the crime occurred. Although the defendant did not enter the restaurant with Beck, converse with him therein, nor hold the gun, he did drive the car in which Beck escaped. Subsequently, both the defendant and Beck were apprehended and the shotgun found in their possession.

We have consistently held that it is the exclusive province of the jury to weigh the evidence and determine the facts, and where there is competent evidence in the record which reasonably supports the verdict, we will not interfere although different inferences might arise from conflicting testimony. *Evans v. State*, Okl.Cr., 569 P.2d 503 (1977). We are of the opinion that the evidence was sufficient for the jury to conclude that the defendant participated in the commission of the crime and, therefore, find this assignment of error to be without merit.

■ The defendant next argues that since the information jointly charged him and Herman Beck as principals without alleging that the defendant aided and abetted in the commission of the crime, said information failed to sufficiently inform him of the charge against which he had to defend. While the State did rely on 21 O.S.1971, § 172, to establish that the defendant was a principal by aiding and abetting, this assignment is patently frivolous in light of 22 O.S.1971, § 432, which provides:

"The distinction between an accessory before the fact and a principal, and between the principals in the first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, must be prosecuted, tried and punished as principals, and no additional facts need be alleged in any indictment or information against such an accessory than are required in an indictment or information against his principal."

Since the indictment may charge an accused as a principal and need not specifically allege that he aided and abetted in the commission of the crime, we find this assignment of error to be without merit. *Johnson v. State*, Okl.Cr., 453 P.2d 390 (1969).

■ Finally, the defendant contends that his court-appointed counsel failed to adequately represent him, thereby denying him a fair trial. Primarily, he complains that the public defender failed to call certain witnesses which the defendant requested, failed to protect the defendant's right to proceed pro se, and failed adequately to confer with the defendant prior to trial. The record supports none of these allegations. Rather it appears that the court-appointed counsel vigorously and capably represented the defendant.

In *Eide v. State*, Okl.Cr., 551 P.2d 275 (1976), we said:

"We have repeatedly held that relief upon the ground of ineffective counsel will be granted only when the trial is a farce or mockery of justice, or is shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation. The burden is clearly upon the defendant to establish inadequate representation, and this burden is not sustained by simply pointing out possible errors in counsel's judgment or lack of success in defense. Neither hindsight nor success is the proper measure for determining the adequacy of legal representation. . . ." (Citations omitted)

Insofar as the defendant has totally failed to meet this burden, we find this assignment to be without merit.

Having reviewed each of the assignments of error raised in both briefs filed in this appeal and having found no error which mandates reversal or modification, we are of the opinion that the judgment and sentence should be and, accordingly, is *AFFIRMED*.

CORNISH, P. J., concurs.

BUSSEY, J., concurs in results.